IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HEATHER ROBERTSON, individually
and as the personal representative of
Jon Robertson, deceased,

                Plaintiff,

v.	CIVIL ACTION NO.   3:16-4242

THE CINCINNATI LIFE INSURANCE COMPANY,
a foreign corporation,
GREG JONES, individually and
as an agent of RDN & Associates, and
RDN & ASSOCIATES, a West Virginia corporation,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant RDN & Associates, LLC's Motion to Dismiss pursuant to Federal Rule 12(b)(6) (ECF No. 3) and Plaintiff Heather Robertson's Motion to Remand (ECF No. 13).  For the following reasons, the Court **DENIES** Plaintiff's Motion to Remand and **GRANTS** Defendant RDN's Motion to Dismiss.

    **I.**    **BACKGROUND**

Plaintiff sued Defendants in state court, alleging that Defendant The Cincinnati Life Insurance Company (Cincinnati Life) wrongfully denied Plaintiff her life insurance coverage and benefits as beneficiary.  *Pl.'s Compl.*, ECF No. 1-1, at ¶ 19.  Plaintiff's decedent, Jon Robertson, submitted a life insurance application in early January 2013 with Cincinnati Life through the

assistance of Defendant Greg Jones (Jones).[1]  *Id.* at ¶ 10.  The Complaint labels Jones as Defendant RDN & Associates, LLC's (RDN) agent.[2]  *Id.* at ¶ 3.  Plaintiff asserts that Jones answered all of the application questions and that all the information was accurate.  *Id.* at ¶¶ 10, 21-22.

Cincinnati Life issued a life insurance policy to Mr. Robertson in late January 2013.  *Id.* at ¶ 11.  Approximately two years later, Mr. Robertson died from complications relating to esophageal cancer.  *Id.* at ¶ 14.  Plaintiff filed a claim to Cincinnati Life for the life insurance coverage and benefits as beneficiary.  *Id.* at ¶ 17.  However, Cincinnati Life refused to pay on the policy because Mr. Robertson allegedly misrepresented material facts about his medical condition in the application, specifically regarding his use of tobacco or nicotine and whether he had experienced chest pain within the last ten years.  *Id.* at ¶ 20.

Plaintiff brings five separate counts against Defendants.  The first three target Cincinnati Life for breach of contract, violation of the West Virginia Unfair Trade Practices Act (UTPA), and common law bad faith.  Plaintiff brings a claim under reasonable expectation of insurance coverage against all three Defendants, and a separate claim against RDN and Jones for a violation of the UTPA.  For the reasonable expectations claim, Plaintiff specifically alleges that she and her husband "relied upon representations" from Defendants "that the life insurance application was submitted appropriately and the policy would provide coverage and pay in the event of the death of Jon Robertson."  *Id.* at ¶ 45.  For the UTPA claim against Jones and RDN, Plaintiff states

---

[1] The Court acknowledges that Jones has not made an appearance in this case.  However, RDN's Motion to Dismiss covers all actions by Jones during his employment and, specifically, during the preparation of Mr. Robertson's application.  The Court does not find any allegations regarding Jones in his individual capacity within Plaintiff's Complaint.  The Motion to Dismiss, thus, fully explains why Jones was fraudulently joined as a defendant.

[2] RDN refutes that Jones acts as its agent, but the Court considers Plaintiff's allegations as true statements for the motion to remand and motion to dismiss standards.

that Defendants violated the "statute in connection with the sale and procurement of Jon Robertson's life insurance policy." *Id.* at ¶ 51.

Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441, basing the Court's jurisdiction on diversity jurisdiction under 28 U.S.C. § 1332. *Notice of Removal*, ECF No. 1. Diversity jurisdiction applies if the case involves complete diversity with citizens from different states and if the amount in controversy exceeds $75,000, exclusive of interests and costs. *See* 28 U.S.C. §1332. The parties agree that the amount in controversy exceeds $75,000, in part because the policy covered $120,000.00. *Notice of Removal*, ECF No. 1, at ¶ 12. Plaintiff moved to remand the case to state court, arguing that removal was improper because the parties lack complete diversity. *Pl.'s Mot. to Remand*, ECF No. 13, at 3. Defendants Jones and RDN are citizens of West Virginia, the same state that Plaintiff is domiciled. Defendants allege that Plaintiff fraudulently joined RDN and Jones to the action to prevent federal court jurisdiction. *Notice of Removal*, ECF No. 1, at ¶ 9. Thus, Defendants argue that Jones and RDN must be dismissed from the action, leaving only diverse parties and conferring jurisdiction on this Court. *See Def. Cincinnati Life's Resp. in Opp.*, ECF No. 15, at 1. The Court will first address the Motion to Remand to assess whether it has jurisdiction, and then turn to the Motion to Dismiss.

## II. LEGAL STANDARD

The party seeking removal has the burden of proving jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). "Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). District courts have original jurisdiction over civil actions between citizens of different states with complete diversity when the amount in controversy exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332.

Even though the statute requires complete diversity, district courts can disregard the citizenship of parties who were fraudulently joined to destroy diversity. *See Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993). To prove fraudulent joinder and establish jurisdiction, the removing party must show either (1) "outright fraud in the plaintiff's pleading of jurisdictional facts" or (2) "that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall*, 6 F.3d at 232). Fraudulent joinder "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

This jurisdictional inquiry is not the appropriate phase of litigation in which to "resolve … various uncertain questions of law and fact." *Hartley*, 187 F.3d at 425. "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992). In *Hartley*, the Fourth Circuit explained that the defendant "alleging fraudulent joinder bears a heavy burden" as the defendant must be able to show "that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." 187 F.3d at 424 (citation omitted). The applicable standard is "more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Id.* The plaintiff must demonstrate "only a slight possibility of a right to relief" because "[o]nce the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.* at 426.

### III. DISCUSSION

#### a. Cincinnati Life Met its Burden for Removal

The threshold question for this Court is whether Cincinnati Life has met its burden of proof when filing its Notice of Removal. Plaintiff argues that Cincinnati Life made conclusory legal assertions that RDN and Jones were fraudulently joined instead of providing any factual assertions that demonstrate "outright fraud" or "that there is no possibility that plaintiff" can establish legal claims against the nondiverse defendants. *Pl.'s Mem. of Law in Supp. of Pl.'s Mot. to Remand*, ECF No. 14, at 4-5; *see also Hartley*, 187 F.3d at 424. A party moving for removal must make a showing by "a statement of facts rightly leading to that conclusion apart from the pleader's deductions." *Wilson*, 257 U.S. at 97.

However, the Court agrees with Cincinnati Life that a notice of removal does not need to contain these factual allegations as long as the reasons for removal can be supported when challenged. The statute on removal mandates that "[a] defendant or defendants desiring to remove any civil action from a State court shall file in the district court … a notice of removal … containing *a short and plain statement* of the grounds for removal." 28 U.S.C. § 1446(a) (emphasis added). The statute does not require detailed factual allegations as to why the defendants were improperly joined, only a short statement of why removal is warranted. Cincinnati Life's Notice of Removal meets this standard, stating that RDN and Jones are "fraudulently and/or improperly joined" and thus should be excluded from the Court's determination of complete diversity.[3] *See Notice of Removal*, ECF No. 1, at ¶¶ 5-6.

Furthermore, the Supreme Court's analysis in *Dart Cherokee Basin Operating Company, LLC v. Owens* provides a helpful comparison. 135 S.Ct. 547 (2014) (involving defendant in Class

---

[3] The Notice of Removal also explained why Jones's consent to removal was unnecessary as he was fraudulently joined to the action. *See Fleming v. United Teacher Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 663 (S.D.W. Va. 2003) (holding that fraudulently joined defendants need not consent to removal).

Action Fairness Act lawsuit justifying removal by amount in controversy). In that case, the Court recognized that the removal statute mirrors the "general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure", and that "[a] statement short and plain need not contain evidentiary submissions." *Id.* at 551 (internal quotations omitted). Rather, a notice of removal must contain only "a plausible allegation" for the amount in controversy that can be supported with evidence after "the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554; *see also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) ("on a challenge of jurisdictional allegations, the party seeking removal bears the burden" (internal quotations and citation omitted)). Although that case involved a decision based on the amount in controversy, the same justification supports requiring evidence for fraudulent joinder once a plaintiff challenges removal rather than requiring it to be stated within the notice of removal.

Moreover, the Fourth Circuit does not bind the Court's analysis on proper removal to the pleadings' allegations but allows the Court to "consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464 (quoting *AIDS Counseling & Testing Ctrs.*, 903 F.2d 1000, 1004 (4th Cir. 1990)). Thus, the determination of whether RDN and Jones were fraudulently joined is not limited to what is alleged in the Notice of Removal, and the Court can "consider evidence outside the pleadings" in making the decision of jurisdiction. *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 403 (S.D.W. Va. 2005) (citation omitted).

Here, Cincinnati Life does not allege that Plaintiff committed outright fraud in the Complaint. Rather, the basis for federal jurisdiction is on complete diversity because RDN and Jones were fraudulently joined as in-state defendants. This claim is stated forthrightly in the Notice of Removal, and Cincinnati Life supported this allegation when challenged by Plaintiff's Motion to Remand. Thus, the Court finds that Cincinnati Life has adequately met its burden to

remove the case, and the Court can, in turn, discuss the claims of fraudulent joinder. The Court's inquiry is limited to whether Plaintiff conceivably may state a claim against either RDN or Jones under West Virginia law based on the allegations in the Complaint.

### b. Claim for Reasonable Expectation of Insurance Coverage

Because Plaintiff's causes of actions are based on West Virginia law, the Court looks to the law of that state to determine fraudulent joinder. Plaintiff's first claim concerning RDN and Jones appears in Count Four for reasonable expectation of insurance coverage. The Supreme Court of Appeals of West Virginia has held that both the insurance company and the agent can be held liable when the agent creates a reasonable expectation of insurance coverage. *Keller v. First Nat'l Bank*, 403 S.E.2d 424, 428 (W. Va. 1991). A reasonable expectations claim incorporates the "traditional rule that any ambiguities in an insurance policy will be resolved in favor of the insured." *Staley v. Mun. Mut. Ins. Co. of W. Va.*, 282 S.E.2d 56, 59 (W. Va. 1981). The doctrine is to guarantee that "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488, 495 (W. Va. 1987) (citation omitted), *overruled on other grounds by Parsons v. Halliburton Energy Servs., Inc.*, 785 S.E.2d 844 (W. Va. 2016). This doctrine traditionally has been applied only to situations in which policy language was ambiguous. *Id.* at 496. However, the West Virginia courts have recognized limited extensions to the doctrine when the insurance agent affirmatively misrepresented part of the policy to the insured plaintiffs. *See Costello v. Costello*, 465 S.E.2d 620 (W. Va. 1995); *Keller*, 403 S.E.2d 424 (W. Va. 1991); *see also Lewis v. State Farm & Cas. Co.*, Civ. No. 3:14-24452, 2015 WL 502035, at *3 (S.D.W. Va. Feb. 5, 2015) (relying on allegations that agent told plaintiffs of specific policy coverage for

rock falls that were later denied when granting motion to remand).

The first such extension involved a reasonable expectation of credit life insurance. In *Keller*, Mrs. Keller received a renewal notice for her credit life insurance policy from the defendant bank, but the bank determined that the renewal was erroneously issued. 403 S.E.2d at 426. The bank cancelled the life insurance policy without informing Mrs. Keller's husband, and when Mrs. Keller died, the bank claimed that no credit life insurance policy was in effect. *Id.* The court held that the bank "must give the coverage or promptly notify the insured of the denial" after actively creating a reasonable expectation of coverage through the renewal notice. *Id.* at 427.

The second extension appeared in *Costello*, when the plaintiff was injured in a motorcycle accident and required insurance coverage from a different vehicle jointly owned with her husband to help pay for the medical bills incurred. 465 S.E.2d at 622. The insurance company denied the claim because the plaintiff was not named on the policy and was separated from her husband at the time. *Id.* The court held that the plaintiff successfully made a claim against the insurance agent because she reasonably expected to be named as an insured person under the policy. *Id.* at 624. The agent's affirmative conduct in the application process led the plaintiff to believe that she had identical coverage to her husband, and the court found that a jury could rule in favor of the plaintiff on that claim. *Id.* Both of these cases represent the limited extension of the doctrine when an insurance agent engages in "specific conduct … during the application or administration process which creates some reasonable expectation of insurance coverage." *Lansing v. Allstate Ins. Co.*, Civ. No. 5:12-cv-0676, 2012 WL 1566354, at *4 (S.D.W. Va. May 2, 2012).

As RDN references in its Response, the Supreme Court of Appeals of West Virginia has retracted from these extensions and reasserted the notion that ambiguity is required to justify a reasonable expectations claim. *See RDN's Resp. to Pl.'s Mot. to Remand*, ECF No. 17, at 9 n.6.

In *Robertson v. Fowler*, the court highlighted that "there must be an ambiguity regarding the terms of that contract" for reasonable expectations to apply. 475 S.E.2d 116, 120 (W. Va. 1996). The court did not take that opportunity to explicitly overturn the extensions in *Keller* and *Costello* and has not yet clarified its position on whether such extensions still exist. As noted previously by this Court, "*Robertson* might very well be an implicit abrogation of *Keller* and *Costello*." *Hill v. John Alden Life Ins. Co.*, 556 F. Supp. 2d 571, 574 (S.D.W. Va. 2008).

Regardless of whether *Keller* and *Costello* are implicitly overruled, Plaintiff's reliance on the allowed extensions is misplaced. *Keller* and *Costello* each involved an insurance agent who "took affirmative action or made specific statements which created a misconception" that the plaintiff reasonably relied upon. *Hill*, 556 F. Supp. 2d at 574. Here, there are no allegations that the agent misrepresented the potential coverage, no allegations of unnoticed cancellation, and no mistakes by the agent in filling out the application. *See Call ex rel. Estate of Call v. Protective Life Ins. Co.*, Civ. No. 3:06-0068, 2006 WL 5926005, at *5 (S.D.W. Va. June 28, 2006) (pleading agent's assurances of coverage after explaining medical history, which sustained claim). Plaintiff alleges that she "relied upon representations … that the life insurance application was submitted appropriately and the policy would provide coverage and pay in the event of the death of Jon Robertson." *Pl.'s Compl.*, ECF No. 1-1, at ¶ 45; *see also id.* at ¶ 46 (reasonably expecting for the application "to be correctly processed"). The only affirmative conduct of RDN and Jones within the Complaint is a representation that Cincinnati Life would pay upon Mr. Robertson's death in accordance with the policy. *Id.* at ¶ 47. There are no facts that show that the application was not submitted properly or that RDN or Jones acted in a way to prevent Plaintiff's coverage. Instead, the Complaint demonstrates that Jones acted in the exact way that Plaintiff expected: correctly processing and submitting the truthful application for potential coverage. Plaintiff admits that

Jones filled out the application accurately based on the information provided to him and cannot point to any specific conduct of policy misrepresentation. *Id.* at ¶¶ 21-22 (stating that Mr. Robertson did not smoke or complain of chest pains, as was answered on his insurance application). Cincinnati Life approved the policy, proving that Jones and RDN submitted the application properly. *Id.* at ¶ 12. Plaintiff challenges the later denial in coverage, but the insurance application includes a clause that warns applicants that "any false statement or misrepresentation may result in the loss of coverage under the policy." *Cincinnati Life Ins. Policy*, ECF No. 16-1, at 24. This is the clause that allegedly justifies Cincinnati Life's denial of benefits, and Plaintiff and her husband were aware of it when Mr. Robertson signed the application. Thus, absent conduct from RDN or Jones to assert otherwise, the denial of benefits from an alleged material misrepresentation does not create a reasonable expectations claim against RDN or Jones.

None of the other allegations or factual support within the Complaint can support a claim of reasonable expectations against Jones or RDN either.[4] The instant action is simply an argument over the policy's enforcement and Cincinnati Life's decision not to issue the benefits. The decision to deny coverage was a decision by Cincinnati Life, and Plaintiff cannot point to any involvement or influence from Jones or RDN in reaching that decision. Plaintiff challenges the alleged material misrepresentation that Cincinnati Life cites to as the reason for its denial, but Plaintiff fails to attribute any of the conduct that led to the denial to Jones's or RDN's actions.

---

[4] In briefing, the parties dispute over whether Jones misunderstood a question regarding Mr. Robertson's chest pain and how that could have affected the application. *See Pl.'s Reply to Cincinnati Life's Resp. in Opp. to Pl.'s Mot. to Remand*, ECF No. 18, at 5. Plaintiff still however maintains that the application was filled out correctly. *Id.* Cincinnati Life further explains that the question on chest pain asked whether the applicant "had or been told by a medical professional he/she had" chest pain. *See Cincinnati Life's Mot. for Leave to Supp. its Resp.*, ECF No. 20, at 2. As this discussion was based on a misunderstanding in briefing, the Court finds that the additional allegation does not justify a reasonable expectations claim against Jones or RDN.

Submitting a truthful application on behalf of an applicant does not create a reasonable expectation of insurance coverage upon the applicant's death.

Ultimately, this case is similar to one in which this Court refused to "stretch[] the doctrine of reasonable expectation of insurance coverage so far that an insurance agent may be held liable for the unilateral decision of the insurance provider, when no representations are made regarding that future decision." *Hill*, 556 F. Supp. 2d at 575 (attempting to hold insurance agent liable for interpretation of pre-existing condition by the insurance company). In that case and this case, the parties disagree on the interpretation and enforcement of one of the clauses within the application. *See id.* Like the plaintiff in *Hill*, Plaintiff here cannot sustain a claim against either Jones or RDN for reasonable expectation of insurance coverage.

### c. Claim Under the West Virginia Unfair Trade Practices Act

Plaintiff's second cause of action against Jones and RDN in Count Five alleges a violation of the UTPA.[5] *Pl.'s Compl.*, ECF No. 1-1, at ¶¶ 50-51. Plaintiff points out that the UTPA creates

---

[5] Plaintiff does not make a specific statutory violation allegation, but rather cites the entirety of UTPA § 33-11-4(1):
> (1) *Misrepresentation and false advertising of insurance policies.—*
> No person shall make, issue, circulate, or cause to be made, issued or circulated, any estimate, circular, statement, sales presentation, omission or comparison which:
> (a) Misrepresents the benefits, advantages, conditions or terms of any insurance policy; or
> (b) Misrepresents the dividends or share of the surplus to be received on any insurance policy; or
> (c) Makes any false or misleading statements as to the dividends or share of surplus previously paid on any insurance policy; or
> (d) Is misleading or is a misrepresentation as to the financial condition of any person, or as to the legal reserve system upon which any life insurer operates; or
> (e) Uses any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof; or

a private cause of action, allowing claims against an individual insurance agent for personal liability. *See Taylor v. Nationwide Mut. Ins. Co.*, 589 S.E.2d 55, 61 (W. Va. 2003). However, in order to sustain a cause of action, Plaintiff must allege conduct violating the UTPA, which Plaintiff has failed to do here.

After copying the UTPA into the Complaint, Plaintiff's only allegation against Jones and RDN is that "[t]he defendants violated the above statute in connection with the sale and procurement of Jon Robertson's life insurance policy." *Pl.'s Compl.*, ECF 1-1, at ¶ 51. There are no factual allegations that tie Jones or RDN to a misrepresentation of benefits, dividends, financial conditions of a person or the insurance company, the nature of the insurance company, or the purpose behind acquiring the policy. *See, e.g.*, *Halkias v. AXA Equitable Life Ins. Co.*, Civ. No. 2:05-cv-0438, 2006 WL 890620, at *3 (S.D.W. Va. Apr. 4, 2006) (finding enough factual allegations to support UTPA claim when complaint alleged that defendant "intentionally misrepresent[ed] the terms and conditions of [the] policy"); *Fellure v. Equitable Variable Life Ins. Co.*, Civ. No. 2:05-cv-0214, 2005 WL 3115851, at *1 (S.D.W. Va. Nov. 21, 2005) (alleging "fraudulently concealed information" and "misrepresenting an insurance policy" under the UTPA). In the Motion to Remand, Plaintiff argues that Jones's representation that the "application was submitted appropriately; that it would be correctly processed; and that life insurance benefits would be paid" became a misrepresentation simply because Cincinnati Life refused to pay on the policy according to the policy's terms. *Pl.'s Mot. to Remand*, ECF No. 14,

---

(f) Is a misrepresentation for the purpose of inducting or tending to induce the lapse, forfeiture, exchange, conversion or surrender of any insurance policy; or
(g) Is a misrepresentation for the purpose of effecting a pledge or assignment of or effecting a loan against any insurance policy; or
(h) Misrepresents any insurance policy as being shares of stock.

at 11.

As explained in the analysis of the reasonable expectations claim, Jones submitted the application accurately based on all of the answers provided by Mr. Robertson, which Plaintiff maintains are truthful statements. The policy was correctly processed, evidenced by Cincinnati Life issuing the policy in late January 2013. There are no factual allegations within the Complaint that demonstrate any misrepresentations or false advertisements by Jones or RDN.[6] Cincinnati Life denied the policy claim and refused to pay because Mr. Robertson allegedly made material misrepresentations on the application. *Pl.'s Compl.*, ECF No. 1-1, at ¶ 20. This caveat to coverage was stated plainly in the life insurance application, and there is no allegation that Jones or RDN made any representation that such clause would not apply if Mr. Robertson provided materially false information on the application. *See Cincinnati Life Ins. Policy*, ECF No. 16-1, at 24. The fact that Cincinnati Life denied insurance benefits to Plaintiff does not automatically translate into misrepresentations by the agent or agency that helped procure the life insurance policy. Life insurance benefits would have been paid under the policy if Cincinnati Life had not discovered alleged material misrepresentations on the application made by Mr. Robertson. Plaintiff attempts with this second claim "to hold insurance agents liable for the provider's unfavorable decision." *Hill*, 556 F. Supp. 2d at 576. Thus, the Court finds that Plaintiff has no plausible claim against RDN or Jones for a violation of the UTPA.

Accordingly, the Court finds that Plaintiff has not alleged viable claims against Jones or

---

[6] Plaintiff points to Jones's failure to tell Mr. Robertson that he had "to supplement or update his [medical] information" after the application was submitted, but the Court finds this argument to be unfounded. *See Pl.'s Reply to Cincinnati Life's Resp. in Opp. to Pl.'s Mot. to Remand*, ECF No. 18, at 7. There is no indication in the pleadings to suggest that such additional information was necessary, and Cincinnati Life granted the policy in January 2013, demonstrating that all information had been provided.

RDN.  Both Jones and RDN were fraudulently joined in an effort to destroy complete diversity. Jones, RDN, and Plaintiff are all citizens of West Virginia.  Cincinnati Life's principal place of business and state of incorporation are in Ohio, making Ohio its citizenship for diversity purposes. Having found that the two in-state defendants were fraudulently joined, diversity is complete. Plaintiff's Motion to Remand, therefore, must be **DENIED**.

### d. Motion to Dismiss

RDN has filed a motion to dismiss the counts alleged against it individually and as the principal of Jones sued in his capacity as an agent.  *RDN's Mot. to Dismiss Pl.'s Compl.*, ECF No. 3.  As the Court has already found that there is no possibility of recovery, RDN must be dismissed from this action.  Plaintiff has failed to make any plausible claim against RDN.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that to survive a motion to dismiss, a complaint must state enough facts for a claim to be "plausible on its face").  Thus, RDN and Jones as an agent of RDN are hereby **DISMISSED**.

The Complaint also names Jones as a defendant individually.  *See Pl.'s Compl.*, ECF No. 1-1.  Although Jones received service of the complaint in state court, he has not made an appearance in this Court.  Looking thoroughly at the Complaint, the Court can find no allegations towards Jones in his individual capacity.  Every statement of fact involving Jones represents an act committed during the course of his employment.  As there are no plausible claims against Jones in his official capacity as an agent under RDN as explained above, the Court finds that Jones was fraudulently joined in his individual capacity as well and should thus be **DISMISSED** from the action.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (ECF No. 13) is **DENIED**, and

Defendant RDN's Motion to Dismiss (ECF No. 3) is **GRANTED**. Defendants RDN and Jones are to be **DISMISSED** from the action.

    The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

    ENTER:    October 14, 2016

_____
ROBERT C. CHAMBERS, CHIEF JUDGE