IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HEATHER ROBERTSON,
individually and as the personal
representative of Jon Robertson,
deceased,

    **Plaintiff,**

v.                                                Case No.: 3:16-cv-04242

THE CINCINNATI LIFE INSURANCE
COMPANY, a foreign corporation,

    **Defendant.**

## MEMORANDUM OPINION and ORDER

Pending is Plaintiff's Renewed Motion for Order Compelling Discovery and supporting memorandum. (ECF Nos. 108, 109). Plaintiff seeks an order compelling the defendant, The Cincinnati Life Insurance Company, to produce financial information relevant to Plaintiff's claim for punitive damages. Plaintiff argues that she is "now able to establish a *prima facie* case that Defendant's conduct resulting in the ultimate denial of her claim for life insurance benefits was grossly negligent, reckless, malicious and/or intentional." (*Id.* at 1). Defendant has filed a response in opposition to the motion, (ECF No. 111), and Plaintiff has filed a reply memorandum. (ECF No. 113). Therefore, the motion is fully briefed. Having carefully considered the arguments and supporting evidence, the undersigned **DENIES** the Renewed Motion to Compel for the reasons set forth below.

1

## I. Relevant Facts and History

On January 3, 2013, Jon Robertson applied for life insurance from Defendant. Question No. 30 of the insurance application asked whether "[i]n the last ten years," Mr. Robertson "had or [had] been told by a medical professional" that he suffered from any of twenty or so medical conditions and symptoms, including "chest pain." (ECF No. 16-1 at 23). Out of the listed conditions and symptoms, Mr. Robertson disclosed only that he had high blood pressure. (*Id.*). Question No. 34 of the application asked whether Mr. Robertson "had ever used tobacco or nicotine products." If a "yes" answer was given, Mr. Robertson was instructed to provide information about what products he used; how much he used; whether he still used them; and when he quit using them, if he no longer used them. (*Id.*). Mr. Robertson indicated that he had never used tobacco or nicotine products. *(Id.*). At the conclusion of the application form, Mr. Robertson agreed that the answers he had given were true and complete to the best of his knowledge and belief. (*Id.* at 24). He acknowledged that the answers would become part of any policy issued and any false statement or misrepresentation could result in the loss of coverage under the policy. (*Id.*).

On January 30, 2013, Defendant issued a policy of insurance on the life of Jon Robertson, partly in reliance on the information provided by Mr. Robertson in the application. (ECF No. 16-1 at 2). The policy included an incontestability clause, which prevented Defendant from challenging a claim made under the policy, except in limited circumstances, once the policy had been in effect for two years from the date of issue. (*Id.* at 15). However, if the insured were to die prior to expiration of the two-year "contestability" period, Defendant automatically investigated any claim asserted under the policy. (ECF No. 108-1 at 3-4).

In September 2014, Jon Robertson developed symptoms of esophageal cancer, a disease which ultimately claimed his life on January 13, 2015. (ECF No. 109 at 1). A few weeks after Mr. Robertson's death, Plaintiff submitted a claim with Defendant under her husband's life insurance policy. Because Mr. Robertson died within the contestability period, Defendant conducted an investigation to verify that the information contained on the application for insurance was true and accurate. (ECF No. 111 at 3). As part of that investigation, Defendant obtained medical records from various health care providers who had seen and treated Jon Robertson in the five years preceding his death. (*Id.*). Based upon notations in some of these records, Defendant concluded that Mr. Robertson had made material misrepresentations in his insurance application. Therefore, Defendant rescinded the policy and denied Plaintiff's claim for benefits.

The specific records that led to Defendant's decision included an office note detailing a visit Mr. Robertson had with his family physician, Dr. Gregory Holmes of Valley Health, on December 26, 2012—eight days before Mr. Robertson completed the insurance application. The office note documented Mr. Robertson's chief complaints as body aches, cough, and nasal congestion for two days and stated that he was complaining that his "chest feels like it has razor blades in it." (ECF No. 111-3 at 8). A second record flagged by Defendant was dated January 25, 2013, less than one month after Mr. Robertson completed the insurance application. This record involved a visit Mr. Robertson made to Nurse Practitioner Mary Adams at Valley Health and indicated that Mr. Robertson was following up on chest pain that radiated to his neck, which occurred once per week and had been present for six months. (ECF No. 111-3 at 10-11). Based on his symptoms, Mr. Robertson was eventually referred to King's Daughters Medical Center for a cardiac work-up. In a third record, prepared on February 6, 2013 by Dr. Eric

Bronstein, a cardiothoracic surgeon at King's Daughters Medical Center, and his nurse practitioner, Mr. Robertson reiterated a history of pain in the left chest that had been present for five to six months, which would radiate at times into his neck, was aggravated by exertion, and was alleviated with rest. (ECF No. 111-4 at 5). Finally, other records from King's Daughters Medical Center, where Mr. Robertson had a quadruple coronary artery bypass grafting surgery performed by Dr. Bronstein in February 2013, include notations that he was a "passive smoker" and a "former smoker" who smoked one cigarette per day. In view of these notations, all of which appear in medical records prepared within two months of the application and apply to the period surrounding the application, Defendant concluded that Mr. Robertson had not provided accurate and complete information regarding his history of chest pain and nicotine use.

In the letter denying Plaintiff's claim, Defendant invited Plaintiff to submit any other information that she wanted Defendant to consider related to the denial of benefits. Accordingly, Plaintiff's attorney sent Defendant thirteen affidavits submitted by family and friends of Jon Robertson, all of whom contended that Mr. Robertson was not a smoker and had not experienced chest pain prior to the date of his insurance application. In addition, Nurse Melissa Hankins, who worked for Dr. Holmes, and Nurse Practitioner Mary Adams signed affidavits denying that Mr. Robertson was a smoker or had chest pain. A similar affidavit was sent on behalf of Dr. Holmes, although that affidavit was not signed. (ECF No. 111 at 5). Defendant received the affidavits, but notified Plaintiff on March 17, 2016 that Defendant had not changed its position. Accordingly, on April 4, 2016, Plaintiff instituted the instant action against Defendant alleging a variety of claims, including breach of contract, common law bad faith, and violations of the West Virginia Unfair Trade Practices Act.

On January 17, 2017, Plaintiff served her first set of discovery requests, which included requests for the production of Defendant's financial statements, profit and loss statements, and income tax returns for the years 2012 through 2016. Defendant objected to these requests as irrelevant, arguing that Plaintiff was not entitled to discover Defendant's financial information until Plaintiff had established a *prima facie* claim for punitive damages. In support of its position, Defendant relied upon *Robinson v. Quicken Loans, Inc.,* No. 3:12-0981, 2013 WL 1704839, at *4 (S.D.W. Va. Apr. 19, 2013). Plaintiff made a motion to compel the financial documents. The motion was denied, as Plaintiff had not supplied evidence sufficient to demonstrate a viable punitive damages claim. (ECF No. 51). Plaintiff presently renews her motion to compel Defendant's financial information on the basis that she has now collected evidence sufficient to maintain a *prima facie* claim for punitive damages and is thus entitled to the discovery.

## II. <u>Relevant Legal Principles</u>

In *Robinson v. Quicken Loans, Inc., supra*, this Court found that a plaintiff is required to make a *prima facie* claim for punitive damages before being entitled to discover a defendant's financial records. *Id.,* at *4. To satisfy this burden, the plaintiff "must produce some factual evidence in support of [the] claim." *Id.* "[S]ufficient supporting evidence" includes affidavits, documentary evidence, testimony, interrogatory responses and the like. *Id,* at n. 3. Merely stating a proper claim for relief, sufficiently pleading factual allegations, and surviving a motion to dismiss are not adequate to demonstrate a *prima facie* case.

In West Virginia, punitive damages may be awarded when a plaintiff establishes "by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a

conscious, reckless and outrageous indifference to the health, safety and welfare of others." W. Va. Code § 55-7-29 (2015); *see, also, Martinez v. Asplundh Tree Expert Co.,* 803 S.E.2d 582 (W. Va. 2017) (holding that W. Va. Code § 55-7-29 applies irrespective of when the cause of action accrued or when the claim or suit is filed). As Defendant points out, in the context of an insurance company's refusal to pay an insured's claim, punitive damages are available only when the insurer's refusal to pay "is accompanied by a malicious intention to injure or defraud." *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 80 (1986).[1] The *Hayseeds* court further explained a plaintiff's burden as follows:

> [P]unitive damages for failure to settle a property dispute shall not be awarded against an insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process. By "actual malice" we mean that the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim. We intend this to be a bright line standard, highly susceptible to summary judgment for the defendant, such as exists in the law of libel and slander, or the West Virginia law of commercial arbitration. Unless the policyholder is able to introduce evidence of intentional injury— not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury.

*Id.* at 80-81. Therefore, to make a *prima facie* claim for punitive damages in the present action, Plaintiff must supply evidence showing that Defendant knew Plaintiff's claim for life insurance benefits was proper, yet nonetheless willfully, maliciously and intentionally denied the claim.

Here, Defendant rescinded Mr. Robertson's life insurance policy on the ground that he made material misrepresentations in the application for insurance. Once the

---

[1] Although *Hayseeds, Inc.,* involved property insurance, the decision applies equally to life insurance policies as they are first-party insurance agreements. *D'Annunzio v. Sec.-Conn. Life Ins. Co.,* 410 S.E.2d 275, 279 (W. Va. 1991).

policy was rescinded, Plaintiff's claim was denied for lack of coverage. "For an insurer to rescind a policy under West Virginia law on the basis of a misrepresentation made by the insured, the insurer must establish that the misrepresentation falls under W. Va. Code § 33–6–7." *Massachusetts Mut. Life Ins. Co. v. Jordan*, No. 3:10-cv-16, 2011 WL 1770435, at *3 (S.D.W. Va. May 9, 2011). West Virginia Code § 33–6–7 provides that misrepresentations, omissions, concealments of fact, or incorrect statements made by an insured in an application for insurance do not constitute grounds for rescission of the insurance policy unless: (a) they are fraudulent; or (b) they are material either to the acceptance of the risk, or the hazard assumed by the insurer; or (c) the insurer in good faith would either not have issued the policy or would not have issued a policy having the same terms with respect to the amount or scope of coverage had the true facts been made known to the insurer. W. Va. Code § 33-6-7. "[F]or an insurer to prevail under § 33–6–7(a), the insurer must establish the insured's specific intent to deceive the insurer. ... For an insurer to prevail under §§ 33–6–7 (b) or (c), however, the insurer need only show that the misrepresentation was material." *ALPS Prop. & Cas. Ins. Co. v. Turkaly*, No. 2:16-CV-10064, 2018 WL 385195, at *3 (S.D.W. Va. Jan. 11, 2018) (citations omitted). Materiality is determined, based on an objective standard, "by whether the insurer in good faith would either not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise." *Id.* (quoting *Massachusetts Mut. Life Ins. Co. v. Thompson*, 460 S.E.2d 719, 724 (W. Va. 1995)). "[T]here need be no causal connection between the cause of death and the misrepresentation" for the insurer to prevail under W. Va. Code § 33-6-7. *Massachusetts Mut. Life Ins. Co.,* 2011 WL 1770435, at *3.

Applying this legal framework, the undersigned considers the evidence submitted by Plaintiff.

## III. <u>Plaintiff's *Prima Facie* Case for Punitive Damages</u>

Attached to her renewed motion, Plaintiff provides portions of deposition testimony given by two of Defendant's Rule 30(b)(6) designees: Jeremy Singer, an employee in Defendant's underwriting department, and Ann Binzer, Defendant's Vice-President of Life Claims. (ECF No. 108-1). Plaintiff argues that this testimony "includes sufficient evidence upon which a jury could conclude" that Defendant engaged in "grossly negligent, intentional and/or malicious conduct" when reaching its decision to deny Plaintiff's claim for life insurance benefits. In particular, Plaintiff argues that Defendant's malicious conduct is manifest in the following actions and inactions:

1. Defendant failed to have a written claims manual despite Section 114-14-8 of the Rules and Regulations of the West Virginia Insurance Commissioner, which mandates that "every insurer shall adopt and communicate to all its claims agents written standards for the prompt investigation and processing of claims." (ECF No. 109 at 6). Plaintiff further contends that Defendant's failure to implement a claims manual violates West Virginia Code § 33-11-4(9)(c), which holds that an insurer engages in an unfair trade practice by failing "to adopt standards for the prompt investigation of claims arising under insurance policies." (*Id.*)

2. Jeremy Singer testified that he decided that Mr. Robertson was a smoker based on a few odd medical records, despite having collected numerous other medical records to the contrary. (ECF No. 109 at 7-8). Mr. Singer admitted that an insurance company is obligated to consider all relevant evidence pertaining to a claim for benefits, even evidence that supports coverage. Nevertheless, Mr. Singer denied reviewing or

considering the affidavits from Mr. Robertson's family and friends, which unequivocally stated that Mr. Robertson was a non-smoker. Indeed, Mr. Singer testified that he was never provided with the affidavits by the claims department. (*Id.*).

3. Ann Binzer testified that she made the decision to deny Plaintiff's claim for benefits on the basis that Mr. Robertson had made material misrepresentations in the application for insurance regarding his history of chest pain and smoking. (*Id.* at 8). She admitted, however, that there was only one physician visit prior to the application in which Mr. Robertson discussed chest pain, and that visit was for sinusitis, not for any chest-related condition. (*Id.* at 8-9). She further admitted that she never asked the underwriting department if it would have refused to issue the policy if it had known about that one visit for sinusitis. (*Id.* at 9). Ms. Binzer agreed that insurance companies are required to perform thorough investigations before denying claims, yet conceded that she never made any effort to clarify inconsistencies in Mr. Robertson's medical records regarding chest pain and nicotine use before she denied Plaintiff's claim. Ms. Binzer admitted that she received dozens of affidavits verifying that Mr. Robertson was not a smoker and never complained of chest pain before applying for life insurance, yet Ms. Binzer made no further effort to investigate the claim. To the contrary, she merely stood on the denial, notwithstanding substantial evidence supporting the validity of Plaintiff's claim. (*Id.* at 10).

In response to Plaintiff's motion, Defendant argues at the outset that Plaintiff applies the wrong standard, emphasizing that Plaintiff must supply "some factual evidence" that Defendant (1) knew Plaintiff's claim was proper and (2) willfully, maliciously, and intentionally denied it anyway. (ECF No. 111 at 10). With respect to the claims manual, Defendant notes that West Virginia Code § 33-11-4-(9)(c) requires only

9

"reasonable standards" for the prompt investigation of claims and § 114-14-8 of the Rules and Regulations of the West Virginia Insurance Commissioner mandates only that there be "written standards" for the prompt investigation and processing of claims. Neither of these sections, therefore, require a written claims manual. Defendant asserts that it produced to Plaintiff in discovery a set of "claim procedural notes," which constitute Defendant's "written standards for the prompt investigation and processing of claims." (*Id.* at 13).

As to Plaintiff's arguments regarding the testimony of Mr. Singer and Ms. Binzer, Defendant contends that the picture painted by Plaintiff is skewed by the many evidentiary gaps left in Plaintiff's factual recitation. Defendant attaches the complete deposition transcript of Ms. Binzer, as well as the transcripts of Ms. Robertson and several medical providers, including Missy Hankins, RN; Mary Adams, NP; and Dr. Eric Bronstein. (ECF Nos. 111-1, 111-2, 111-3, 111-4, 111-5). Defendant maintains that the evidence establishes a few critical facts that are fatal to Plaintiff's punitive damages claim. First, Mr. Robertson's medical records, which were collected after his death, contain entries indicating that Mr. Robertson was a former smoker, who had been suffering from intermittent chest pain for four to five months before he completed and submitted the life insurance application to Defendant. Second, if Mr. Robertson had included full and accurate information on his application about his chest pain and nicotine use, this information would have been given to Defendant's underwriters, and the underwriters would not have issued Mr. Robertson's life insurance policy. Third, Ms. Binzer denied Plaintiff's claim after being advised by the underwriting department that it would not have issued the policy because of the information in the medical records that conflicted with the answers in the insurance application. Fourth, although Mr. Singer did not review the

affidavits of Mr. Robertson's family and friends, Mr. Singer's boss, Brad Behringer did review them, and he advised Ms. Binzer that the underwriting department still would not have issued the policy based upon the conflicting notations found in Mr. Robertson's medical record. Consequently, Defendant contends that Plaintiff has failed to produce any evidence to satisfy the first prong of a punitive damages claim; that being, that the Defendant knew Plaintiff's claim was proper. Since Plaintiff cannot clear that hurdle, Defendant contends, Plaintiff's motion should be denied.

## IV.  Discussion

There is no dispute that Jon Robertson died within the two-year contestability period of the life insurance policy issued by Defendant. Consequently, when Plaintiff made a claim for benefits under the policy, Defendant automatically investigated the matter. As part of the investigation, Defendant collected Mr. Robertson's medical records from various health care providers, including Valley Health, King's Daughters Medical Center, and Dr. Eric Bronstein.

In these records, Defendant found several references to Mr. Robertson having recurrent bouts of chest pain over a period of four to six months both before and after he applied for life insurance. The chest pain was exacerbated by exertion, relieved by rest, and sometimes radiated to his neck. The records also documented an episode of pain approximately one week before Mr. Robertson applied for life insurance that was described as feeling like razor blades in his chest. In addition to the references to chest pain, the records included at least one notation that Mr. Robertson was a "former trivial smoker" who used less than one cigarette per day. Given that the medical records were prepared in close proximity to Mr. Robertson's completion of the insurance application and applied to the time period covered by the application, Defendant determined that Mr.

Robertson made material misrepresentations in his insurance application.

Defendant's conclusion was based on specific questions in the application that asked Mr. Robertson if he had experienced any chest pain in the past ten years, or if he has ever used any tobacco or nicotine products. Mr. Robertson did not divulge having any chest pain and did not admit to ever using any nicotine or tobacco products. Ms. Binzer, who was investigating Plaintiff's claim, provided the records to Defendant's underwriters. The underwriters advised that had they been given the information contained in the medical record, they would not have issued Mr. Robertson's life insurance policy.

Plaintiff argues that Defendant's rescission of the policy and denial of her claim were grossly negligent or reckless; she certainly may be able to convince a jury of that position. However, the evidence provided by Plaintiff to date simply does not satisfy the high threshold of actual malice required to state a *prima facie* case of punitive damages. To begin, Plaintiff's allegation that Defendant violated West Virginia Code § 33-11-4(9)(c) is not borne out by the record. The statute merely mandates the promulgation of "standards," not a claims manual, and Defendant produced in discovery what it contends are written standards governing claims resolution.

While the deposition excerpts provided by Plaintiff focus largely on the paucity of evidence proving that Mr. Robertson was a smoker, the record before the Court establishes that Defendant also based its rescission and denial on Mr. Robertson's failure to disclose his ongoing bouts of chest pain, which radiated into his neck and apparently pre-existed his insurance application by at least a few months. Although Plaintiff vehemently denies the accuracy of records documenting that Mr. Robertson complained in January and February 2013 of having five to six months of intermittent chest pain, these records indeed corroborate Defendant's belief that Mr. Robertson was and had been

suffering from chest pain at the time he completed the insurance application. Moreover, Mr. Robertson underwent a quadruple coronary bypass surgery approximately two months after applying for life insurance, which tends to lend some credence to the notations of ongoing left-sided chest pain.

Plaintiff argues that Defendant acted with malice by not performing a more thorough investigation before denying the claim. However, the claim was denied based upon the materiality of the notations in the medical record and their inconsistency with the answers given by Mr. Robertson in the application. Ms. Binzer submitted the medical information she collected to the underwriting department for an opinion as to whether that information would have affected the issuance of Mr. Robertson's life insurance policy. In response, the underwriting department stated that it would not have issued Mr. Robertson's life insurance policy had it been provided with previously undisclosed information. Put simply, at least in the view of Defendant's underwriting department, Mr. Robertson's failure to disclose his history of chest pain and nicotine use constituted material misrepresentations, which, alone, justified the rescission.

Mr. Singer, the underwriter, explained how Mr. Robertson's medical information was considered "from an underwriting perspective," stating that when an underwriter considers whether to issue a life insurance policy, these records are closely considered and conservatively approached. (ECF No. 108-1 at 17). For example, any reference to smoking leads to the presumption that the potential insured is a smoker. In the case of conflicting information, the underwriter does not issue a life insurance policy until additional investigation is conducted to determine "exactly what is going on." (*Id.* at 18). In this case, Mr. Singer testified that the references in Mr. Robertson's records to smoking and chest pain would have been enough to cause the underwriting department to refuse

to issue a life insurance policy. Although Mr. Singer did not review the affidavits submitted by Plaintiff after the claim denial, according to the evidence supplied by Defendant, Mr. Singer's supervisor reviewed the affidavits and advised that underwriting still would not have issued the policy.

Plaintiff has not demonstrated with the evidence submitted to date that Defendant knew Plaintiff's claim for life insurance benefits was proper, but denied it nonetheless. To the contrary, Defendant continues to contend that its denial was proper and provides its rationale based upon Mr. Robertson's medical records and application. As Plaintiff offers no evidence that Defendant's actions rose to the level of actual malice required by West Virginia law, Plaintiff simply has not met her burden at this point in the litigation. Therefore, the renewed motion to compel is denied.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** October 4, 2018

_____
Cheryl A. Eifert
United States Magistrate Judge