IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

HEATHER ROBERTSON, individually
and as the personal representative of
Jon Robertson, deceased,

                Plaintiff,

v.                                  CIVIL ACTION NO.  3:16-4242

THE CINCINNATI LIFE INSURANCE COMPANY,
a foreign corporation,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the Motions for Summary Judgment submitted by Plaintiff Heather Robertson and Defendant Cincinnati Life Insurance Company. ECF Nos. 119, 120. In her complaint, Plaintiff alleges claims against Defendant under four causes of action: (1) breach of contract; (2) violation of the West Virginia Unfair Trade Practices Act ("UTPA"); (3) common law bad faith; and (4) reasonable expectations. *See Compl.*, ECF No. 1-1, at 10–21.

Plaintiff moves for summary judgment on her breach of contract claim and violation of the UTPA claim—counts one and two of her complaint, respectively. *Pl.'s Mot. for Summ. J.*, at 2. Plaintiff claims she is entitled to summary judgment on these two counts because Defendant failed to pay her benefits upon the death of her husband, Jon Robertson, and failed to conduct a reasonable investigation into whether Mr. Robertson made material misrepresentations on his application for life insurance. *See Mem. In Supp. of Pl.'s Mot. for Summ. J.*, ECF No. 122, at 4, 18. Plaintiff also moves for summary judgment on her allegation that Defendant violated section

114-14-8 of the West Virginia Insurance Regulations, arguing that Defendant failed to adopt written standards for the investigation of claims. *Id.* at 23.

Defendant moves for summary judgment on all counts Plaintiff asserts against it in the complaint. *Def.'s Mot. for Summ. J.*, at 1. Defendant claims it is entitled to summary judgment on all counts because Mr. Robertson made material misrepresentations on his application for life insurance, and Defendant reached this conclusion after conducting a reasonable investigation. *See Mem. In Supp. of Def.'s Mot. for Summ. J.*, ECF No. 121, at 9–14.

The parties have fully briefed the issues and the motions are now ripe for adjudication. As explained below, the Court **GRANTS**, **IN PART**, **AND DENIES**, **IN PART**, both Plaintiff's and Defendant's Motions for Summary Judgment.

## I. BACKGROUND

On January 3, 2013, Plaintiff's decedent, Jon Robertson, applied for life insurance with Defendant. *Application*, ECF No. 122-3, at 1, 3. Question 30 of the application asked if the "Proposed Insured had or had been told by a medical professional he/she had any of the following" twenty-two listed medical conditions. *Id.* at 2. The only checked box related to "High Blood Pressure," and the remaining 21 boxes, which included one listing chest pain, were unchecked. *Id.* Question 31(a) of the application asked whether the proposed insured had, in the last five years, "been hospitalized or consulted, been examined or treated by any physician, psychiatrist or other medical professional not disclosed in response to the prior questions." *Id.* Mr. Robertson answered no. *Id.* Question 34 of the application asked if "the Proposed Insured ever used tobacco or nicotine Products." *Id.* The checked box was in the "No" column. *Id.* On January 30, 2013, Defendant issued a policy of life insurance to Plaintiff's decedent, naming Mr. Robertson as an insured thereunder. *Compl.*, at 8; *Dep. of Singer*, ECF No. 122-21, at 2. Less than two years later, on

January 13, 2015, Mr. Robertson died from esophageal cancer. *Death Certificate*, ECF No. 122-1.

On January 23, 2015, Plaintiff made a claim for benefits provided by Defendant. *Claim*, ECF No. 122-9. However, this claim was denied, and Defendant voided the policy via a letter dated April 8, 2015, after Defendant determined that Mr. Robertson provided inaccurate information in response to Questions 30, 31(a), and 34 of the application. *Denial Letter*, ECF No. 122-2.

On April 4, 2016, Plaintiff filed this action against Defendant in the Circuit Court of Cabell County, West Virginia. *Notice of Removal*, ECF No. 1, at 1. A Notice of Removal to this Court was then filed by Defendant on May 6, 2016, pursuant to 28 U.S.C. § 1441. *Id.* Both parties filed their motion for summary judgment on October 30, 2018. ECF Nos. 119, 120. Both parties then filed their response and reply on November 13, 2018, and November 20, 2018, respectively. ECF Nos. 127, 129, 132, 133.

## II. STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, a court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted). Therefore, summary judgment

will not be granted if a reasonable jury could return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 247–48.

**III. DISCUSSION**

    **A. Count One: Breach of Contract**

Both Plaintiff and Defendant argue that they are entitled to summary judgment on Plaintiff's claim that Defendant breached the terms of the life insurance policy issued to Mr. Robertson by failing to pay the benefits due under the policy. *See Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 4; *Mem. In Supp. of Def.'s Mot. for Summ. J.*, at 7. Defendant contends it is entitled to summary judgment because the evidence demonstrates that Mr. Robertson had a history of chest pain and smoking, he omitted these facts in his application for an insurance policy, and Defendant would not have issued the policy had this history been disclosed. *See Mem. In Supp. of Def.'s Mot. for Summ. J.*, at 9–10. However, Plaintiff asserts that there is no "legally sufficient evidence" to support the conclusion that Mr. Robertson had a history of chest pain or smoking, and thus no evidence that he withheld information on his application. *See Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 5. The Court must deny each parties' request for summary judgment as to count one because Mr. Robertson's history of chest pain and smoking is a material fact reasonably disputed by both parties.

West Virginia Code Section 33-6-7 provides that "[m]isrepresentations, omissions, concealments of facts, and incorrect statements" in an application for an insurance policy may prevent recovery under the policy if those acts are:

    (a) Fraudulent; or

    (b) Material either to the acceptance of the risk, or to the hazard
    assumed by the insurer; or

> (c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

The West Virginia Supreme Court has stated that materiality under this statue is determined by:

> [W]hether the insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.[1]

*Powell v. Time Ins. Co.*, 382 S.E.2d 342, 250 (W. Va. 1989).

As a result of this holding, "neither West Virginia Code § 33–6–7(b) nor (c) requires that an insurer prove the subjective element that an insured specifically *intended* to place misrepresentations, omissions, concealments of fact, or incorrect statements on an application in order for the insurer to avoid the policy." *Thompson*, 460 S.E.2d at 724 (emphasis added).

Avoidance of a policy because of an alleged misrepresentation is an affirmative defense which the insurer bears the burden of proving by a preponderance of the evidence. *Powell*, 382 S.E.2d at 350. Additionally, "an *insured* may defeat this [affirmative] defense by setting forth evidence that the misrepresentation, omission, concealment of fact, or incorrect statement related to a *minor ailment* suffered by the insured which was so unrelated and disconnected from the disabling condition suffered by the insured that it could not have possibly been material with respect to the issuance of the policy." *Thompson*, 460 S.E.2d at 727 (emphasis added).

---

[1] West Virginia Code § 33–6–7 adopts the standard of whether a "reasonably prudent insurer" would consider a misrepresentation material to the contract. *Massachusetts Mut. Life Ins. Co. v. Thompson*, 460 S.E.2d 719, 724 (W. Va. 1995).

Because Defendant attempts to avoid the policy as a result of a misrepresentation, it bears the burden of proving this affirmative defense. Thus, the Court will first list Defendant's evidence which supports its right to void the policy, then examine Plaintiff's counterevidence to determine whether summary judgment should be granted to either party.

**1. Chest Pain**

Defendant first argues that it is entitled to summary judgment because Mr. Robertson had a history of chest pain that he failed to disclose, and Defendant would not have issued the policy had this history been presented in Mr. Robertson's application. *See Mem. In Supp. of Def.'s Mot. for Summ. J.*, at 9–10. In support of its position that Defendant had a history of chest pain, Defendant submits the following evidence: (1) a Valley Health medical record from December 26, 2012, which states Mr. Robertson complained that his "chest feels like it has razor blades in it";[2] (2) a medical record from a visit to nurse practitioner Mary Adams, also of Valley Health, on January 25, 2013, which states Mr. Robertson complained that he had "chest pain that radiates up neck x 6 months. Happens once a week";[3] (3) a medical record by Dr. Eric Bronstein, cardiologist at King's Daughters Medical Center, from February 6, 2013, which states Mr. Robertson had "a history of chest pain in left chest over the last 5-6 months. Pain would radiate, at times, to the neck";[4] and (4) a medical record by Dr. Srinivasan, also of King's Daughters Medical Center and from the same day as the record from Dr. Bronstein, which states Mr. Robertson had "retrosternal chest pain, radiation to his neck with minimal exertion such as walking up a flight of stairs. This has been going on for last 5-6 months".[5]

---

[2] *Valley Health Medical Record*, ECF No. 120-6, at 1.
[3] *Adams Medical Record*, ECF No. 120-7, at 1.
[4] *Dr. Bronstein Medical Record*, ECF No. 120-8, at 1.
[5] *Dr. Srinivasan Medical Record*, ECF No. 120-9, at 1.

### a. Valley Health Medical Record

In response to the first piece of evidence listed above—the Valley Health medical record from December 2012—Plaintiff asserts this evidence is not "material" to the issuance of a policy. *See Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 5 n.3. Plaintiff argues this evidence of chest pain is immaterial because "it *resulted* from a bronchial infection with persistent coughing," the "supervisor of [Defendant's] underwriting admitted that a chest cold would not be material to the issuance of a policy," and an "insurance company cannot void a policy because of undisclosed information relating to minor ailments." *Id.* (emphasis added). The issue is that, even though a chest cold may not be material to the issuance of the policy and Defendant may not void a policy because of undisclosed information relating to minor ailments, there is still a factual dispute as to whether Mr. Robertson's described chest pain in this record actually "resulted" from a bronchial infection. Plaintiff attempts to argue that the following deposition testimony from Ms. Adams, a nurse practitioner, proves that Mr. Robertson's chest pain in December of 2012 "resulted" from an infection, chest cold, or other minor ailment:

> Q: Okay. The chest pain that he was experiencing on December 26th felt like razor blades. Given his later history, in terms of the January 25th meeting where he said this was going on for six months, do you now believe that that was part of what was happening in terms of his heart?
>
> A: No.
>
> Q: Okay. What do you think it was?
>
> A: What was going on on December the 26th?
>
> Q: Yes, ma'am.
>
> A: Like a bronchial infection with drainage or, some post nasal drainage. And he had been coughing and coughing.

*Dep. of Adams*, ECF No. 111-3, at 13.

While this testimony is certainly *helpful* to Plaintiff's position that the chest pain described in the Valley Health medical record was immaterial, it is hardly *dispositive* of the issue. Defendant considers Ms. Adams' testimony "conjecture," and—in light of the remaining medical records discussed in the next section that also details chest pain—rejects the conclusion that Robertson's chest pain described in the Valley Health medical record "resulted" from a bronchial infection. *See Mem. In Supp. of Def.'s Mot. for Summ. J.*, at 9. Therefore, the fact of whether Mr. Robertson was experiencing chest pain in December of 2012 as a result of an immaterial minor ailment, such as a bronchial infection, or something more serious and material is disputed by the two parties and must be presented to a jury.

Plaintiff asserts that if Defendant "desires to characterize Mr. Robertson's chest complaints on December 26" as "anything other than symptoms associated with sinnutis (a cold), it is [Defendant] that bears the burden of proof of establishing the same, not the plaintiff," and Defendant "has no such evidence." *Reply Mem. In Supp. of Pl.'s Mot. for Summ. J.*, ECF No. 132, at 6. Because this statement seems to suggest that Defendant bears the burden of *producing evidence* that the chest complaints were *not* from symptoms associated with sinnutis, the Court must clarify that this is an incorrect statement of the rule. Defendant does not bear the burden of producing evidence to show Mr. Robertson's chest pain was *not* from symptoms associated with sinnutis, but rather it is Plaintiff who bears the burden of producing such evidence. *See Thompson*, 460 S.E.2d at 727 (holding that once a defendant has established a prima facia case for an affirmative defense "*an insured may defeat this defense by setting forth evidence* that the misrepresentation, omission, concealment of fact, or incorrect statement *related to a minor ailment* ….") (emphasis added). Thus, once Defendant has produced evidence to show there was an omission in the application that a reasonably prudent insurer would consider a material

misrepresentation—such as a complaint of a sensation of razor blades in the chest—*Plaintiff* may defeat this defense by setting forth her own evidence which shows this pain only resulted from a minor ailment such as sinnutis. While a reasonable jury could find in Plaintiff's favor based on the testimony of Ms. Adams, it could also find that Ms. Adams lacks credibility or otherwise reject her opinion and conclude that the complaint in a medical record of razor blade sensations in the chest is enough evidence for Defendant to have met its burden of proving its affirmative defense.

Therefore, because a reasonable jury could find that Mr. Robertson's first described chest pain from the Valley Health medical record was material, Plaintiff's motion for summary judgment on the breach of contract claim in her complaint must be denied, regardless of the Courts analysis regarding the remaining evidence and arguments.[6] However, because the Court acknowledges that a reasonable jury could also find Mr. Robertson's described chest pain in the Valley Health medical record was *immaterial*, the Court must analyze Plaintiff's counterevidence and explanations to Defendant's submitted remaining medical records before it can rule on Defendant's motion for summary judgment.

### b. Remaining Medical Records

Plaintiff acknowledges that the remaining medical records described above indicate that Mr. Robertson experienced material chest pain, but simply argues that these records are inaccurate. *Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 10. To prove the inaccuracy of the second medical record, from January 2013, Plaintiff offers the deposition testimony of Melissa Hankins, the writer of that record. *Dep. of Hankins*, ECF No. 122-6. Ms. Hankins claims that she wrote Mr. Robertson

---

[6] Plaintiff claims that in the factual disputes present in this case the "*Powell* court made it clear that the rule of liberality should be applied in favor of the insured." *Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 9. However, *Powell* was discussing how a *statute* should be construed, not factual disputes. *Powell*, 382 S.E.2d at 348 (holding that "*statutes*, which are designed to alleviate the harshness of the common law, are to be liberally construed in favor of the insured.") (emphasis added).

was experiencing "chest pain" even though Mr. Robertson had only complained of neck pain. *Id.* at 7. Ms. Hankins claims that she wrote "chest pain" because she knew this would allow for a stress test to be scheduled, and she was concerned his neck pain was cardiac related. *Id.* at 7–8. To prove the inaccuracy of the final two medical records, written by Dr. Bronstein and Dr. Srinivasan, Plaintiff signed an affidavit stating that she was present during Mr. Robertson's visits with Dr. Bronstein and Dr. Srinivasan, and that he never told either doctor he experienced any chest pain. *Affidavit of Robertson*, ECF No. 122-22, at 2–3. Plaintiff asserts that a possible explanation for these allegedly inaccurate statements in the medical records from Dr. Bronstein and Dr. Srinivasan is that the doctors copied Ms. Hankins' original notes, essentially creating a domino effect of incorrect medical records. *Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 14–15.

Regardless of the explanation, and regardless of the evidence Defendant offers to attack Plaintiff's counterevidence,[7] Plaintiff has submitted sufficient contradictory evidence to raise a dispute as to a material fact: whether Mr. Robertson experienced chest pain. When Defendant requests this Court to grant its motion for summary judgment despite Plaintiff's contradictory evidence it is clearly asking this Court to *weigh* the evidence and find in its favor,[8] which is not appropriate at this stage of the proceedings. Because Defendant has not demonstrated that it is entitled to summary judgment as to count one based on Mr. Robertson's history of chest pain, the Court will now examine Plaintiff's and Defendant's evidence related to Mr. Robertson's history of smoking.

---

[7] Defendant offers evidence that Dr. Bronstein reviews a patient's medical history with them, and that Ms. Hankins stated that no one was present in the exam room with her and Mr. Robertson during the December visit—conflicting with Plaintiff's contention that she was present for all her husband's doctor's visits. *See Reply Mem. In Supp. of Def.'s Mot. for Summ. J.*, ECF No. 134, at 3, 4; *Dep. of Dr. Bronstein*, ECF No. 111-4, at 5; *Dep. of Hankins*, ECF No. 111-2, at 15.

[8] For example, Defendant attacks Plaintiff's argument and evidence as "unpersuasive, at best." *Mem. In Opp. To Pl.'s Mot. for Summ. J.*, ECF No. 128, at 11.

**2. Smoking**

In support of its position that Mr. Robertson had a history of smoking, and therefore it should be entitled to summary judgment as to count one, Defendant submits more medical records, including: (1) a medical note written by Dr. Srinivasan on February 6, 2013, which states that Defendant had a "history of smoking"[9]; (2) a medical note written by Dr. Srinivasan on June 14, 2013, which states that Defendant was a "former trivial cigarette smoker"[10]; and (3) a medical note written by Dr. Bronstein on March 14, 2013, which states that Defendant is a "former smoker."[11]

In response to this evidence, Plaintiff argues that there are various pieces of evidence which help prove that Mr. Robertson was never a smoker, but at worst merely a "passive smoker." *Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 7–8. Specifically, Plaintiff testified that Mr. Robertson was never a smoker, and has submitted fourteen affidavits stating the same. *See Affidavits*, ECF No. 122-24; *Dep. of Robertson*, ECF No. 122-17, at 2. Additionally, there are multiple medical records which state that Mr. Robertson was either a "passive smoker" or that he never smoked before. *See* ECF No. 122-25, at 10; ECF No. 122-30, at 2; ECF No. 122-28, at 1.

Based on the above evidence the Court finds that there is a genuine dispute as to whether Mr. Robertson was a former smoker. Both parties have submitted inconsistent evidence as to whether Mr. Robertson was a former smoker, or even a passive smoker, and both parties even have evidence from medical documents which support their positions. Thus, a reasonable jury could find for either party based on the evidence presented, and the question of whether Mr. Robertson was a smoker is a question of fact that must be left to a jury. Therefore, the Court denies Defendant's motion for summary judgment as to count one.[12]

---

[9] *Dr. Srinivasan Medical Record*, ECF No. 120-9, at 1.
[10] *Dr. Srinivasan Medical Record*, ECF No. 120-10, at 12.
[11] *Dr. Bronstein Medical Record*, ECF No. 120-10, at 8.
[12] Defendant asserts that "if the Court agrees that Cincinnati Life effectively rescinded the Policy then Count

**B. Count Two: Violation of the West Virginia Unfair Trade Practices Act**

Next, both Plaintiff and Defendant argue that they are entitled to summary judgment on Plaintiff's claim that Defendant violated the UTPA, specifically W. Va. Code § 33-11-4(9)(d),[13] because of the reasonableness, or lack therefore, of Defendant's investigation into Plaintiff's policy claim. *See Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 18; *Mem. In Supp. of Def.'s Mot. for Summ. J.*, at 11. The Court disagrees with both parties, as the facts of this case demonstrate that the reasonableness of Defendant's investigation is in dispute, and a reasonable jury could find in favor either party.

Insurance claims made in West Virginia are governed in part by the UTPA, W. Va. Code § 33-11-1 *et seq.* In one section, the UTPA states that an insurer cannot refuse to pay claims "without conducting a reasonable investigation based upon all available information" with "such frequency as to indicate a general business practice." W. Va. Code § 33-11-4(9)(d). The question of whether a reasonable investigation was conducted based upon all available information is "ordinarily [a] question[] of fact for the jury." *Jackson v. State Farm Mut. Auto. Ins. Co.*, S.E.2d 346, 354 (W. Va. 2004).

Because liability under subsection (9) depends upon finding a frequency of violations that constitutes a "general business practice," the West Virginia Supreme Court has gone into detail explaining what constitutes a "general business practice" by stating:

> [T]he evidence should establish that the conduct in question constitutes more than a single violation of W.Va. code § 33–11–4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit,

---

Three of Plaintiff's Complaint should also be dismissed." *Mem. In Supp. of Def.'s Mot. for Summ. J.*, at 11. Because the Court does not reach the conclusion that Defendant effectively rescinded the policy, the Court also denies Defendant's motion for summary judgment as to count three.

[13] Although Plaintiff states Defendant violated "33-11-4(9)(c)," Plaintiff claims Defendant violated this subsection by refusing to pay Mr. Robertson claim "without conducting a reasonable, fair, and objective investigation based upon all available information"—a subsection (d) issue. *Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 18.

custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

*Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1, Syl. pt. 4 (W.Va. 1996).

Defendant argues that it conducted a reasonable investigation. In support of this position, Defendant asserts that after Mr. Robertson's death it obtained medical records that demonstrated there were material misrepresentations on Mr. Robertson's application regarding smoking and chest pain. *See Dep. of Singer*, ECF No. 133-1, at 18. Additionally, Defendant then obtained and reviewed *conflicting* evidence, such as other medical records and affidavits that Plaintiff provided, which essentially gave innocent explanations for the apparent misrepresentations. *See id.*; *Dep. of Binzer*, ECF No. 120-16, at 17. After reviewing the evidence, however, Defendant determined that the medical records which supported its position outweighed the medical records and affidavits which did not. *Dep. of Binzer*, ECF No. 120-16, at 17. While this may not be the conclusion that Plaintiff wanted or would have reached herself, Defendant's receipt and review of this available evidence, which includes evidence that contradicted its conclusion, could lead a reasonable jury to find that its investigation was reasonable.

However, Plaintiff has also set forth evidence that could lead a reasonable jury to conclude that Defendant's investigation was unreasonable. For example, when asked whether there was a "thorough investigation based upon all available evidence conducted on claims" Luana Dillingham, employee of Defendant, stated that "the gamut of the investigation" was merely receiving the medical records and all claim forms, and sending those to Ann Binzer—Defendant's representative—and the underwriter for review. *See Dep. of Dillingham*, ECF No. 129-3, at 2–3. However, Ms. Binzer stated in her deposition that she never had a position with Defendant's

company that allowed her to do an investigation of a claim. *See Dep. of Binzer*, ECF No. 120-16, at 14. Additionally, when the underwriter, Jeremy Singer, was asked if he ever thought about whether the information contained in medical records could be wrong, he stated "[n]o." *See Dep. of Singer*, ECF No. 133-1, at 18. Finally, even though Defendant was provided with fourteen affidavits stating that Mr. Robertson was not a smoker, Defendant did not interview any one of those fourteen individuals, despite the fact that Ms. Binzer acknowledged in her deposition that she had no reason to believe the affidavits were false. *See Dep. of Binzer*, ECF No. 120-16, at 9, 12. Therefore, while Defendant may have explanations for its investigation process or decisions, this evidence detailed above showing a lack of diligence and inconsistency could lead a reasonable jury to find that its investigation was unreasonable.

Defendant argues that even if Plaintiff has sufficient evidence to prove that there was a UTPA violation, Plaintiff has failed to provide evidence for the second requirement of the UTPA: that the insurer have violations with "such frequency as to indicate a general business practice." *See Mem. In Opp. To Pl.'s Mot. for Summ. J.*, at 17. However, for reasons explained in the next section, the Court finds a violation of the West Virginia insurance regulations due to Defendant's lack of written standards. This violation of the regulations could lead a reasonable jury to also find that Defendant violated § 33-11-4(9)(d) of the UTPA[14] and that such a violation must have logically occurred each and every time Defendant takes on a new claim. Therefore, the Court holds that a finder of fact could conclude "that the practice [of the violation is] sufficiently pervasive …

---

[14] While the West Virginia Supreme Court has explained that "a violation of an insurance regulation standing alone does not give rise to a cause of action under West Virginia Code § 33–11–4(9)," a violation of the regulation may be reviewed "insofar as they may inform the scope and purpose of the statutory practice at issue." *Russell v. Amerisure Ins. Co.*, 433 S.E.2d 532, 535 n.3 (W. Va. 1993) (overruled in part on other grounds by *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 451 S.E.2d 721, 725 (W. Va. 1994)); *Am. Safety Indem. Co. v. Stollings Trucking Co.*, No. 2:04–0752, 2007 WL 2220589, at *7 (S.D.W.Va. July 30, 2007).

[such] that the conduct can be considered a 'general business practice'" as opposed to "an isolated event." Thus, the Court denies both parties' motion for summary judgment on count two of Plaintiff's complaint.

## C. Violation of Section 114-14-8 of the West Virginia Insurance Regulations

Next, Plaintiff argues that she is entitled to summary judgment on the issue of whether Defendant violated the West Virginia insurance regulation that requires an insurer to "adopt and communicate to all its claims agents written standards for the prompt investigation and processing of claims." *Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 23. Based on the evidence presented by both parties, the Court agrees with Plaintiff.

The West Virginia Code of State Regulations requires that every insurer "adopt and communicate to all its claims agents written standards for the prompt investigation and processing of claims." W. Va. Code R. § 114-14-8. The Court finds that Defendant violated the regulations as a matter of law based on two pieces of evidence. First, the deposition testimony of Defendant's representative Ms. Binzer provides strong evidence that Defendant has not adopted, implemented, and communicated reasonable written standards to its claims agents for the prompt investigation and processing of claims. When Ms. Binzer was asked "[w]hat guidelines or manuals [they] have at Cincinnati Life Insurance Company that will tell [the] employees how to investigate a life insurance claim," Ms. Binzer responded that none exist, stating: "We do not have claims manual."[15] *Dep. of Binzer*, ECF No. 122-35, at 2. Ms. Binzer also stated that she did not know

---

[15] Defendant argues, and the Court *generally* agrees, that a "claims manual" is not specifically required under the regulations, as only the phrase "written standards" is used. *Mem. In Opp. To Pl.'s Mot. for Summ. J.*, at 16. However, whatever distinction there may be between a "claims manual" and "written standards" is likely irrelevant in this case for two reasons. First, the Court is reluctant to hold that a reasonable jury could find that asking what "*guidelines or manuals* exist to tell employees how to investigate a life insurance claim"—what Ms. Binzer was asked—and asking what "*written standards* exist to tell employees how to investigate a life insurance claim"—what the regulations state—would lead to different answers. Second, it was Ms. Binzer, not Plaintiff, who arbitrarily chose to classify this former question as asking about a "claims manual."

whether West Virginia required insurance companies to have "written guidelines or manuals to instruct its employees on the proper manner to investigate an insurance claim." *Id.* at 3.

Second, and most importantly, Defendant's *own* evidence and argument for why it has complied with the regulations leads this Court to conclude that it certainly has not. Defendant claims that its "claim procedural notes, entitled 'Guidelines For Setting Up A Claim & Sending Claim Form For Life Claims' meet the requirement of the regulation." *Mem. In Opp. To Pl.'s Mot. for Summ. J.*, at 16. Simply put, the Court cannot hold that any reasonable juror could read these "claim procedural notes" and reach the same conclusion. As Plaintiff points out, these supposed "written standards for the prompt investigation … of claims" do not even mention the word "investigation," but instead only direct employees how to set-up a claims file, send sympathy letters, or perform other tasks unrelated to investigation or determining liability. *See Claim Notes*, ECF No. 122-36; *Reply Mem. In Supp. of Pl.'s Mot. for Summ. J.*, at 12. While these notes may satisfy the second requirement of the regulation that Defendant "adopt and communicate to all its claims agents written standards for the prompt … *processing* of claims," the regulation requires written standards for this "and" investigations.[16]

Additionally—and perhaps most troubling—Defendant's analysis of why its procedural notes satisfy the regulations is limited to the following statement: "The claims procedural notes … are maintained by Cincinnati Life as 'written standards for the prompt investigation and processing of claims' and are in compliance with § 114-14-8." *Mem. In Opp. To Pl.'s Mot. for Summ. J.*, at 16. Unfortunately for Defendant, a statement asserting a conclusion is not an analysis, and

---

[16] This dual requirement is why the Court is unpersuaded by Defendant's expert, Mr. Martin, who argues that Defendant does meet the requirement of the regulation. *See Affidavit of Martin*, ECF No. 127-1, at 2–3. Mr. Martin's reasoning for why Defendant's "claims procedural notes" satisfy the regulation is that the regulation "*simply* requires an insurance company to maintain written guidelines for *handling* claims, which Cincinnati Life did." *Id.* at 3 (emphasis added). This is plainly an incorrect reading and understanding of the regulation by Defendant's expert, and that misunderstanding explains why he believes the "claims procedural notes" satisfy the regulation.

Defendant has provided no explanation for how its "procedural notes," which has no mention of investigating claims or determining liability, satisfies its obligation to have written standards for the prompt investigation of claims. Therefore, because the forgoing reasons lead this Court to hold that no reasonable jury could find Defendant satisfied the requirements of section 114-14-8 of the West Virginia insurance regulations, the Court grants Plaintiff's motion for summary judgment as to this issue.

**D. Count Four: Reasonable Expectations**

In count four of her complaint, Plaintiff asserts a claim of "reasonable expectations." *Compl.*, at 17. As Defendant correctly argues, the "doctrine of reasonable expectations is not a stand-alone cause of action but rather a rule of construction applicable to insurance contracts." *See State ex rel. Erie Ins. Prop. And Cas. Co. v. Beance*, No.15-0968, 2016 WL 3392560, at n.2 (W. Va. June 13, 2016). Therefore, the Court grants Defendant's motion for summary judgment with respect to count four.

**E. Punitive Damages**

Finally, Defendant argues that Plaintiff has "failed to make a prima facia showing of … punitive damages," and therefore it is entitled to summary judgment. *Mem. In Supp. of Def.'s Mot. for Summ. J.*, at 18. Because the Court finds that Plaintiff has demonstrated evidence to show that Defendant knew Mr. Robertson's claim was proper, the Court disagrees with Defendant and denies its motion for summary judgment regarding the punitive damages issue.

West Virginia Code § 55-7-29(a) states the following regarding limitations on punitive damages:

> An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the

plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

In an action for breach of contract, punitive damages are only available when "the conduct of the defendant constitutes an independent, intentional tort." *Hayseed, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 80 (W. Va. 1986). As a result of this "intentional tort" requirement "an insurer is not liable for punitive damages by its refusal to pay on a claim *unless such refusal is accompanied by a malicious intention to injure or defraud.*" *Id.* (emphasis added). Therefore, punitive damages "shall not be awarded against an insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process." *Id.*

For a plaintiff to prove "actual malice" it must provide evidence that demonstrates "the company *actually knew* that the policyholder's claim was proper," but intentionally denied the claim. *Id.* at 80, 81 (emphasis added). The Supreme Court of West Virginia has stated that it "intend[s] this to be a bright line standard, highly susceptible to summary judgment for the defendant, such as exists in the law of libel and slander, or the West Virginia law of commercial arbitration." *Id.* at 81. The West Virginia Supreme Court has further emphasized that, for the issue of punitive damages to be submitted to a jury, the policyholder cannot merely introduce evidence of "negligence, lack of judgment, [or even] incompetence," but must introduce evidence "of intentional injury." *Id.*

Based on the evidence presented by Plaintiff, the Court holds that a reasonable jury could find that Defendant "actually knew" Mr. Robertson's claim was proper. In reaching this conclusion, the Court draws its attention to Ms. Binzer's testimony where she admitted to receiving and reading the affidavits which contradicted the information Defendant relied on in the medical records. *See Dep. of Binzer*, ECF No. 120-16, at 12. Critical to note, Ms. Binzer answered "no" when asked whether she had "any reason to believe [the affidavits] were not true." *Id.* This means

that Defendant read affidavits which contradicted the information Defendant relied on in the medical records, and nonetheless determined that *not even the conflicting medical records* were "reason to believe" the affidavits were not true. It would be illogical to believe in the accuracy of statements of smoking and chest pain in medical records, yet not view this information as a reason to even *doubt* the truth of affidavits which explicitly conflict with it. Therefore, the testimony by Ms. Binzer could be interpreted by a reasonable jury as her acknowledging that after weighing the evidence she determined that the information regarding smoking and chest pain in the medical records was not true, yet nevertheless denied coverage. This conclusion is certainly not the only one a jury could reach. For example, a reasonable jury could undoubtedly conclude that it is absurd to think Ms. Binzer would make such a "smoking gun" statement, and that she was merely attempting to say that she did not have any strong reason to believe one piece of conflicting evidence over the other. Regardless, the conclusion is one for the jury to reach. Therefore, because a reasonable jury could find that Defendant knew Plaintiff's policy claim was proper based on Ms. Binzer's testimony, the Court denies Defendant's motion for summary judgment as to punitive damages.

## IV. CONCLUSION

Based upon the analysis provided above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 119) regarding only the issue of whether Defendant violated Section 114-14-8 of the West Virginia Insurance Regulations and **DENIES** the remainder of Plaintiff's Motion for Summary Judgment. Additionally, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 120) regarding only Plaintiff's claim of Reasonable Expectations and **DENIES** the remainder of Defendant's Motion for Summary Judgment.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 4, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE